COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

§                              No. 08-17-00127-CR

EX PARTE:                      §          Appeal from

§

CARLOS OROZCO                  §     384th District Court

§        of El Paso County, Texas

§

§      (TC # 20000D05432-384-1)

§

# **O P I N I O N**

In 2001, Appellant Carlos Orozco pleaded guilty to possessing less than one ounce of cocaine and in 2005, completed deferred adjudication probation. In 2016, Appellant filed an Article 11.072 application for writ of habeas corpus asserting that his plea of guilty was unknowingly and involuntarily entered. TEX.CODE CRIM.PROC.ANN. § 11.072. The trial court denied the application without conducting a hearing, and he now appeals the trial court's order denying relief. Because Appellant has failed to overcome the presumption that his plea was knowingly and voluntarily entered, and because he has failed to establish facts that would entitle him to relief, we affirm the trial court's ruling.

## **BACKGROUND**

### *The Plea*

On November 29, 1996, the U.S. Immigration and Naturalization Service notified Appellant, a Mexican citizen, that his petition for a Visa had been approved. In November 2000,

Appellant was charged with unlawful possession of less than one ounce of cocaine, a state jail felony. TEX.HEALTH&SAFETYCODE ANN. § 481.115(b).

On March 2, 2001, Appellant entered a plea of guilty to the charged offense. At the outset of the plea proceedings, the trial court first asked Appellant whether he spoke English, and Appellant answered, "Yes." With few exceptions hereafter noted, Appellant continued to answer the trial court in English throughout the plea proceedings.

Appellant acknowledged to the trial court that he understood the charge against him as well as his rights to remain silent, to confront the State's witnesses and cross-examine them, to a presumption of innocence and to have the State prove him guilty beyond a reasonable doubt, to call witnesses in his defense and compel their testimony, to a jury trial on the issue of guilt, and the consequences of the State's satisfaction or failure in proving its case to a jury. Appellant further acknowledged that he understood that he had the right to have the jury assess his punishment in the event it found him guilty, and when asked whether had any questions about his rights, Appellant stated that he did not.

Appellant affirmatively answered the trial court's inquiries regarding whether he freely and voluntarily gave up these rights, freely and voluntarily pleaded guilty, and was pleading guilty because he was guilty and for no other reason. The trial court admonished Appellant that if he was not a citizen of the United States, the federal government would remove him from the United States, would exclude him from ever being legally readmitted, and would deny him the right to ever become a naturalized citizen, and Appellant acknowledged that he understood these admonishments.

The trial court informed Appellant that under the terms of the plea agreement, among other provisions, the adjudication of the charge against him would be deferred for three years. The trial

2

court asked Appellant whether he knew what an appeal is and whether he would give up his right to appeal if the trial court followed the plea agreement. Appellant responded affirmatively. He also acknowledged that he had examined with defense counsel the trial court's written Notice to Defendant of his Rights, Written Admonishments, Waiver of Rights, Judicial Confession, and Plea Agreement, and had understood and signed the document.

When the trial court asked Appellant whether anyone was forcing or coercing him to plead guilty or threatened him in regard to his plea, Appellant answered, "No." When the trial court asked Appellant whether it was his or his attorney's decision to plead guilty, Appellant did not initially respond. The trial court asked, "Whose decision is it?" and the record shows that defense counsel then asked Appellant, "It's your decision, right?" to which Appellant answered, "Yes." The trial court then asked, "Are you pleading guilty because your lawyer is telling you to plead guilty? Do you understand what I'm saying?" The trial court then addressed Appellant in Spanish, and Appellant responded in Spanish.

Appellant informed the trial court in English that he had been educated in Juarez through "ninth," and when the trial court asked Appellant in English and then in Spanish whether he had ever been treated by a psychiatrist or had ever been declared mentally incompetent, Appellant answered, "No." Appellant also answered in the negative when the trial court inquired whether Appellant had ever been hit on the head or had suffered from blackouts, and whether he was under the influence of alcohol, narcotics, or prescription drugs. Defense counsel acknowledged that he had reviewed the evidence with Appellant, Appellant's plea was supported by the evidence, and Appellant had been able to assist counsel with his defense. Counsel also confirmed that Appellant had no problems communicating with him. The trial court found Appellant competent to enter his plea.

3

The State declared that if the case had proceeded to trial, El Paso Police Officers would have testified: (1) that they had stopped Appellant on November 21, 2000, for suspicion that the driver of a swaying vehicle with lights off was driving while intoxicated; (2) Appellant displayed signs of intoxication and was placed under arrest for driving while intoxicated; and (3) while inventorying the vehicle, the officers found a folded dollar bill containing a white powdery substance. The white powdery substance tested positive for cocaine. Defense counsel stated, "No objection," when the State offered the signed plea papers and the motion for deferred adjudication in evidence to the trial court.

The trial court asked Appellant whether he understood what the State's prosecutor had said, and Appellant answered that he did. The court then asked, "Is this the way it happened?" and Appellant answered, "Yes." When the trial court asked Appellant whether he was pleading guilty or not guilty, Appellant answered, "Guilty." The trial court found the evidence supported Appellant's plea of guilty and found him guilty of possession of less than one gram of cocaine. Prior to deferring adjudication for three years in accordance with the plea agreement, the trial court asked additional questions of Appellant, all of which he answered in English except when providing the street number of his home, the number of children he had, and the phonetic spelling of one child's name. On December 1, 2005, after receiving evidence that Appellant had satisfactorily completed deferred-adjudication community supervision, the trial court entered an order dismissing the case against Appellant.

## Writ of Habeas Corpus

On June 23, 2015, the U.S. Citizenship and Immigration Service (USCIS) notified Appellant that his daughter's petition to adjust his status had been approved and that Appellant, as beneficiary of the petition, was not eligible to file for adjustment of status. The form also provided

4

notice that although the petition had been approved, USCIS and the U.S. Department of Homeland Security reserved the right to verify information submitted in the petition to ensure conformity with applicable laws, rules, regulations, and other authorities, and specified that information obtained during the course of the verification process would be used "to determine whether revocation, rescission, and/or removal proceedings are appropriate."

On September 19, 2016, fifteen years after entering his plea of guilty, Appellant filed an application for writ of habeas corpus. In his application, Appellant asserted in part that his guilty plea was not knowingly and voluntarily entered as a consequence of defense counsel's alleged failure to translate the Article 26.13 immigration admonishments, thereby resulting in constitutional error and affecting his substantial rights. He also contended that he was prejudiced by defense counsel's alleged failure to investigate and discover evidence that "should have caused [defense counsel] to change his recommendation in the plea, or to provide an [immigration-safe] disposition."

### *Affidavit*

In support of his writ application, Appellant appended his affidavit, in which he asserted the following. Appellant stated that he does not read or speak English, and that previously he and defense counsel had only spoken to each other in Spanish. On the date of to his plea proceedings, defense counsel asked Appellant whether he spoke English, and Appellant informed defense counsel that he did not. Appellant also informed defense counsel that he was not a U.S. citizen and inquired of defense counsel whether his "crime" would affect his ability to obtain or "fix [his] papers." Defense counsel advised Appellant not to worry and that everything would be fine.

On the date of his plea proceedings, defense counsel advised Appellant to plead guilty, and Appellant informed counsel that he did not want to plead guilty because the cocaine was not his

5

and he was not guilty. Defense counsel explained to Appellant the time and effort of proceeding to trial and his risk of being deported if he lost at trial. Defense counsel informed Appellant that he had secured probation, and upon completion of probation, the cocaine offense would be removed from his record, but Appellant's driving-while-intoxicated charge would not. Appellant became scared and pleaded guilty because defense counsel advised him to do so.

Defense counsel did not inform Appellant that he would be deported "for certain" if he pleaded guilty, and Appellant alleged that had he known that he would be deported, he would not have pleaded guilty but would have pursued a jury trial so that, if he was found not guilty, he would not suffer "immigration issues." Appellant asserted that he was willing to risk a longer sentence by proceeding to trial for a chance to be found not guilty and remain in the United States, and urged that he would have asked defense counsel to obtain a plea bargain that would not result in mandatory deportation because he has lived in the United States for a long time and did not wish to be separated from his family, friends, and life in the United States.

Appellant alleged that at the outset of the plea proceeding, defense counsel advised him to answer as defense counsel instructed. The trial court spoke in English and asked defense counsel if a translator was needed, and defense counsel answered, "[N]o." Appellant asserts he knew this because "Elvira Salazar had some earphones on and a lady was translating what the judge was saying." The trial court spoke to defense counsel in English, and when the trial court asked Appellant a question, defense counsel leaned over and whispered, "Yes, Sir," which Appellant repeated as defense counsel instructed. Appellant remembers that the trial court asked him questions that he did not understand, and contended that he only understood the trial court's questions that were asked in Spanish. Defense counsel then explained to Appellant that he had been given three years' probation.

6

More than ten years earlier, in 2005, after preparing "to send his packet to Immigration," "someone" told Appellant his record would affect him, and he cancelled a scheduled interview with USCIS. Thereafter, Appellant visited his defense counsel who offered to expunge his record, and Appellant paid defense counsel. USCIS sent Appellant a letter about an interview but because he had not received any documents from defense counsel, Appellant cancelled the interview, went to defense counsel's office, and obtained "a paper" indicating that Appellant had completed his deferred adjudication and his case had been dismissed.

*Ruling*

Appellant provided no affidavit from defense counsel.[1] Appellant did not request a hearing on his application for habeas corpus, and the record on appeal does not reflect that any hearing was scheduled. The same trial judge who presided over Appellant's plea proceeding also presided over his writ application. The trial court entered findings of fact and conclusions of law favorable to the State, and denied Appellant's writ application.

**DISCUSSION**

*Article 11.072*

The Texas Court of Criminal Appeals has recognized that Article 11.072 is "the exclusive means by which the district courts may exercise their original habeas jurisdiction under Article V, Section 8, of the Texas Constitution in cases involving an individual who is either serving a term of community supervision or who has completed a term of community supervision." *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex.Crim.App. 2008). A person who has been granted community supervision must assert his or her collateral attack in accordance with the statutory

---

[1] We note that defense counsel died in March 2015, more than one year before Appellant filed his application for writ of habeas corpus.

7

procedures set out in Chapter 11 of the Code of Criminal Procedure. *State v. Guerrero*, 400 S.W.3d 576, 582 (Tex.Crim.App. 2013). Generally, an applicant seeking post-conviction habeas corpus relief must prove his claims by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex.Crim.App. 2002).

Section 6 of Article 11.072 specifies that the trial court may order affidavits, depositions, interrogatories, or a hearing, or may rely on the court's personal recollection in making its determination regarding an application for writ of habeas corpus relief. TEX.CODE CRIM.PROC.ANN. art. 11.072, § 6. However, Article 11.072 does not require a hearing when the issues can be resolved without one. *Ex parte Salazar*, 510 S.W.3d 619, 627 (Tex.App.--El Paso 2016, pet. ref'd); *Ex parte Aguilar*, 501 S.W.3d 176, 179 (Tex. App.--Houston [1st Dist.] 2016, no pet.)(trial court may consider evidence in form of affidavits attached to an Article 11.072 application without conducting a hearing). Moreover, a trial court is free to disbelieve an affidavit presented in support of a habeas application. *See Ex parte Scott*, 541 S.W.3d 104, 117 n.13 (Tex.Crim.App. 2017).

*Jurisdiction and Standard of Review*

Article 11.072 provides this Court jurisdiction to consider an appeal of an order denying habeas corpus relief. TEX.CODE CRIM.PROC.ANN. art. 11.072, § 8. In reviewing a trial court's decision to deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App. 2006); *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex.Crim.App. 2007). In an Article 11.072 post-conviction habeas corpus proceeding, the trial judge is the sole finder of fact. *See Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex.Crim.App. 2011).

Our review of a trial court's ruling on an Article 11.072 application for writ of habeas corpus is highly deferential. *See State v. Guerrero*, 400 S.W.3d 576, 583 (Tex.Crim.App. 2013). Accordingly, we afford almost total deference to the trial court's findings of fact that are supported by the record, especially when the trial court's fact findings are based upon an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex.Crim.App. 2006); *Ex parte Peterson*, 117 S.W.3d at 819. In those instances, we use an abuse-of-discretion standard. *See Ex parte Garcia*, 353 S.W.3d at 787; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990). That degree of deference applies even where, as here, all the evidence is submitted by affidavits, and it also applies to any implied findings and conclusions supported by the record. *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex.Crim.App. 2010); *Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex.Crim.App. 2006)(reviewing courts defer to trial court's implied factual findings supported by record, even when no witnesses testify and all evidence is submitted in form of written affidavits). An applicant's delay in seeking habeas corpus relief may prejudice the credibility of his claim. *See Ex parte Young*, 479 S.W.2d 45, 46-47 (Tex.Crim.App. 1972)(in case where facts and circumstances of case could not be fully explored because some participants had died, and the memories of others were "erased" by lapse of time, court declined to overturn presumably valid conviction "at this late date," eleven years after conviction, merely because State could not rebut habeas petitioner's testimony). If resolution of the ultimate questions turns on an application of legal standards absent any credibility issue, we review the determination *de novo*. *See Ex parte Peterson*, 117 S.W.3d at 819.

*Knowing and Voluntary Guilty Plea*

When a defendant enters a guilty plea in a state criminal trial, he waives three constitutional rights: the right against compulsory self-incrimination, the right to trial by jury, and the right to

confront his accusers. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *Ex parte Palmberg*, 491 S.W.3d 804, 807 (Tex.Crim.App. 2016). An accused's guilty plea must be entered knowingly and voluntarily. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *Ex parte Palmberg*, 491 S.W.3d 804, 807 (Tex.Crim.App. 2016)(due process requires that an accused's relinquishment of these rights during a guilty plea be undertaken voluntarily with sufficient awareness of the consequences); *Kniatt*, 206 S.W.3d at 664. He must possess an understanding of the law in relation to the facts surrounding his plea. *McCarthy*, 394 U.S. at 466, 89 S.Ct. at 1171; *Ex parte Palmberg*, 491 S.W.3d at 807. Further, the accused must have sufficient awareness of the relevant circumstances surrounding the plea. *McMann v. Richardson*, 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed. 2d 763 (1970); *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed. 2d 747 (1970); *Ex parte Palmberg*, 491 S.W.3d at 807.

A guilty plea is valid only if it is "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *N. Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *Guerrero*, 400 S.W.3d at 588. However, a defendant may have sufficient factual awareness despite laboring under misapprehensions. *Brady*, 397 U.S. at 757, 90 S.Ct. at 1473; *Ex parte Broussard*, 517 S.W.3d 814, 817 (Tex.Crim.App. 2017). "When a defendant pleads guilty knowing that a particular fact is unknown or at least uncertain, he cannot later invalidate his plea if he misapprehended that fact or the State's ability to prove it." *Ex parte Broussard*, 517 S.W.3d at 817. For example, a guilty plea is not necessarily involuntary when a defendant misapprehends a known unknown, such as when an accused is charged with and pleads guilty to delivery of cocaine, and a laboratory test reveals that the accused carried a different illicit substance, methamphetamine. *See Ex parte Broussard*, 517 S.W.3d at 819, 820. When

considering whether to accept a plea agreement with its attendant waivers of rights, an accused generally weighs the certainty and benefits associated with pleading guilty against the risk involved at trial. *Ex parte Broussard*, 517 S.W.3d at 819.

Prior to accepting a guilty plea, the trial court must admonish the defendant. TEX.CODE CRIM.PROC.ANN. art. 26.13(a). The purpose of Article 26.13 is to assure that a defendant does not plead guilty unless it is done with a full understanding of the charges against him and the consequences of his plea. *Basham v. State*, 608 S.W.2d 677, 678 (Tex.Crim.App. 1980). The Article 26.13 admonitions must include, among other things, the fact that if the defendant is not a citizen of the United States of America, a plea of guilty may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law. TEX.CODE CRIM.PROC.ANN. art. 26.13(a)(4). The admonitions of Article 26.13 serve to protect several constitutional rights of the defendant, but the statutory admonitions are not constitutionally required. *VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex.Crim.App. 2007).

A trial court's substantial compliance in admonishing a defendant under Article 26.13 is sufficient in the absence of a showing that the defendant was not aware of the consequences of his plea and that he was misled or harmed by the court's admonishment. *Richards v. State*, 562 S.W.2d 456, 458 (Tex.Crim.App. 1977)(opinion on reh'g). When the record reflects that a defendant was properly admonished, a prima facie showing exists that the guilty plea was entered knowingly and voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex.Crim.App. 1998). The burden then shifts to the defendant to establish that, notwithstanding the statutory admonishments, he did not fully understand the consequences of his plea such that he suffered harm. *Id.*

When an appellant raises an Article 26.13 statutory admonishment claim, harm is analyzed under Rule 44.2(b), which mandates that "[a]ny other error, defect, irregularity, or variance that

11

does not affect substantial rights must be disregarded." TEX.R.APP.P. 44.2(b); *Davison v. State*, 405 S.W.3d 682, 691 (Tex.Crim.App. 2013). When examining non-constitutional error in the context of a guilty plea, the critical issue is whether we have fair assurance that the accused's decision to plead guilty would not have changed had the trial court provided the mandatory admonitions. *Anderson v. State*, 182 S.W.3d 914, 919 (Tex.Crim.App. 2006).

## I.

Appellant presents two issues for our consideration. In Issue One, he contends the trial court erred in "not acting as a court of equity to apply the Applicant's equities for the Applicant's writ of habeas corpus." Appellant contends the trial court should have acted as a "court of equity" and should have performed the revised analysis established by the Texas Court of Criminal Appeals in *Ex parte Perez*, 398 S.W.3d 206, 208, 215 (Tex.Crim.App. 2013).

*Perez* expanded the definition of prejudice under the then-existing laches standard and was developed with regard to the "parameters of the equitable doctrine of laches as it applies to bar a long-delayed application for a writ of habeas corpus." *Id.* The State did not assert the equitable doctrine of laches in its answer, nor did Appellant explain in his application for writ of habeas corpus why the equitable doctrine of laches was not applicable to bar habeas relief. The trial court did not bar Appellant's writ application on the basis of laches. Although we recognize that Appellant's fifteen-year delay in filing his application may have been a factor considered by the trial court in performing its analysis, we conclude the revised prejudice analysis announced in *Perez* is not applicable here as Appellant suggests.

To the extent that Appellant has suggested throughout his brief that the trial court's failure to conduct an evidentiary hearing deprived him of an opportunity to fully develop the habeas record, we note here and address further in our analysis of Issue Two that the trial court is not

required to order an evidentiary hearing in making its determination under Article 11.072. TEX.CODE CRIM.PROC.ANN. art. 11.072, § 6; *Ex parte Salazar*, 510 S.W.3d at 627; *see also Ex parte Alfaro*, 378 S.W.3d 677, 679 (Tex.App.--Beaumont 2012, no pet.)(it is within trial court's discretion to determine whether to consider habeas affidavits or conduct an evidentiary hearing). Moreover, Appellant did not request an evidentiary hearing, nor did he object in the trial court on this basis. *See* TEX.R.APP.P. 33.1; *Ex parte Salazar*, 510 S.W.3d at 627. Consequently, this complaint is not preserved for our review. *See Ex parte Alfaro*, 378 S.W.3d at 679. Issue One is overruled.

**II.**

In Issue Two, Appellant contends the trial court erred when it concluded Appellant failed to satisfy his burden of establishing that his guilty plea was not knowingly and voluntarily entered. Although raised in Issue One, Appellant concedes that the trial court's immigration admonishments satisfied Article 26.13 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM.PROC.ANN. art. 26.13. He also acknowledges that Texas courts do not retroactively apply the holdings in *Padilla v. Kentucky*, in which the United States Supreme Court held that counsel must advise a client of the immigration removal consequences of his plea where the terms of the relevant statute are succinct, clear, and explicit. *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S.Ct. 1473, 1483, 176 L.Ed.2d 284 (2010); *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex.Crim.App. 2013)(*Padilla*'s rule does not retroactively apply in habeas or similar proceeding to benefit defendant whose conviction was already final when *Padilla* was handed down); *but see Ex parte Garcia*, 547 S.W.3d 228, 230 (Tex.Crim.App. 2018)(affirmative misadvice claim, where attorney is under no duty to render immigration-consequence advice but renders incorrect advice to client, is cognizable and differs from *Padilla*'s imposition of affirmative duty to advise client

13

of immigration consequences of plea in certain cases).

The record reflects that Appellant and his counsel signed written admonishments complying with Article 26.13, and that Appellant orally reaffirmed to the trial court his understanding of the admonishments when the trial court went over them at the plea hearing. *See* TEX.CODE CRIM.PROC.ANN. art. 26.13. Additionally, the trial court explicitly and unconditionally informed Appellant that if he is not a United States citizen, the United States government would remove him, would exclude him from ever being legally readmitted, and would deny him the right to ever become a naturalized United States citizen. Appellant informed the trial court, without hesitation or inquiry or question, that he understood these consequences. Appellant voiced no concern and did not seek clarification regarding the trial court's immigration-related admonishments.

Because the record reflects that Appellant was properly admonished, a prima facie showing exists that his guilty pleas were knowingly and voluntarily made, and it is Appellant's burden to establish that, notwithstanding the statutory admonishments, he did not fully understand the consequences of his plea such that he suffered harm. *See Martinez*, 981 S.W.2d at 197. A defendant who attests during the plea hearing that his plea is voluntary bears a heavy burden to prove he entered the plea involuntarily at a subsequent hearing. *Fielding v. State*, 266 S.W.3d 627, 636 (Tex.App.--El Paso 2008, pet. ref'd). In determining the voluntariness of a plea we consider the record as a whole. *Martinez*, 981 S.W.2d at 197.

*Analysis*

Appellant asks us to "set aside the arguments regarding the deficiencies of the trial court or plea counsel and focus on whether the record supports the legal conclusion, . . . that [Appellant] knowingly and voluntarily pleaded guilty to a controlled substance offense knowing that he would

14

be ineligible to lawfully reside in the United States with his wife, children, family and way of life thereafter." He specifically challenges the trial court's findings that: (1) acceptance of the plea bargain allowed Appellant to avoid a felony-grade conviction; (2) Appellant failed to demonstrate a viable defensive theory he could have raised at trial; (3) the court did not find a reasonable probability that had Appellant known of the immigration consequences of his plea, he would have insisted on going to trial on a state-jail-felony that carried a punishment of mandatory probation; (4) any decision by Appellant to reject the advantageous plea offer and to proceed to trial would not have been rational under the circumstances; and (5) Appellant's allegation or assertion that he did not understand the immigration-consequences admonishment because of any alleged inability to understand the English language was not credible.

We address together Appellant's first, third and fourth challenges to the trial court's findings of fact. The trial court found that Appellant's acceptance of the plea bargain allowed him to avoid a felony-grade conviction. Appellant contends his acceptance of the plea bargain did not matter to him as a non-citizen and provided him no benefit because deferred adjudication of a guilty plea is a felony conviction for immigration purposes. Instead, he claims that had he proceeded to trial he could have received a mandatory probated sentence, and this, he contends, weighs heavily against the trial court's finding.

Appellant also claims the evidence does not support the trial court's findings that there was no reasonable probability that had Appellant known of the immigration consequences of his plea he would have rejected the advantageous 3-year deferred adjudication plea agreement, and that any decision to reject the advantageous plea offer and proceed to trial would not have been rational under the circumstances. He contends that his contentions are correct because the deportation consequences for the plea deal and the risk of being convicted by a jury and sentenced to

15

mandatory probation were the same.

It is true that for purposes of federal immigration law, a guilty plea for possession of a controlled substance in exchange for deferred adjudication community supervision is a "conviction." *Guerrero*, 400 S.W.3d at 588. And it is true that if Appellant had rejected the plea offer, gone to trial, and been convicted, he would have risked the same federal deportation consequences. When considering whether to accept a plea agreement with its attendant waivers of rights, an accused generally weighs the certainty and benefits associated with pleading guilty against the risk involved at trial. *Ex parte Broussard*, 517 S.W.3d at 819. In his affidavit, Appellant acknowledges that trial counsel advised him of this risk, and in fact admits that defense counsel informed him that his charge for driving while intoxicated would remain but complains that defense counsel did not tell him that he would be deported "for certain" if he pleaded guilty. However, we again note that during the plea proceedings the trial court explicitly and unequivocally admonished Appellant that on entering a plea of guilty, the federal government would deport him, would exclude him from ever being legally readmitted, and would deny him the right to ever become a naturalized citizen. Appellant informed the trial court that he understood this. And it was true that by entering a plea of guilty to a state-jail felony offense and successfully completing deferred adjudication, Appellant averted a felony-grade conviction for state law purposes. TEX.HEALTH&SAFETYCODE ANN. § 481.115(b). In light of this and other evidence, the trial court could have reasonably concluded that it would not have been rational under the circumstances for Appellant to reject the plea bargain and go to trial. These trial-court findings are supported by the record, and we defer to them.

Appellant notes that the trial court did not have the benefit of the opinion espoused in *Lee v. United States*, 137 S.Ct. 1958, 1962, 198 L.Ed.2d 476 (2017), and argues that it portends the

16

same outcome in this case. In that case, defense counsel assured Lee, a non-citizen who had lived in the United States for almost three decades and most of his life as a lawful permanent resident, that if he pleaded guilty, he would not be deported. *Lee*, 137 S.Ct. at 1962, 1965. Lee had no real defense to the charge and accepted a plea bargain that carried a lesser prison sentence than the one he faced if he proceeded to trial. *Id*. Lee sought to vacate his sentence on the basis that counsel had rendered ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 687-94, 104 S.Ct. 2052, 2065-68, 80 L.Ed.2d 674 (1984)(two-pronged test for establishing ineffective assistance of counsel requires showing of deficient performance by counsel and resulting prejudice to defendant). In support of this assertion, and unlike the facts here, both defense counsel and Lee provided evidence that deportation was the determinative issue in Lee's decision to proceed under the plea agreement. *Lee*, 137 S.Ct. at 1965.

The United States Supreme Court held that when a defendant shows that counsel's deficient performance led him to accept a guilty plea rather than go to trial, a reviewing court must consider whether the defendant was prejudiced. *Lee*, 137 S.Ct. at 1965. The defendant can show prejudice by demonstrating a reasonable probability that, but for defense counsel's errors, he would have insisted on going to trial and would not have pleaded guilty. *Id*. However, the Court emphasized that reviewing courts "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for this attorney's deficiencies." *Id*. at 1967. Instead, we are to look to contemporaneous evidence to substantiate a defendant's expressed preferences. *Id*. The Court described Lee's circumstances as unusual and noted that the contemporaneous evidence during Lee's plea proceedings revealed Lee's concerns regarding deportation, and show that Lee pleaded guilty only after counsel advised him that the trial court's immigration admonishment was a "standard warning." *Id*. The Supreme Court disagreed with

the Government's argument that it would be irrational for a defendant in Lee's position to reject the plea offer in favor of trial, in part because the consequences of Lee taking a chance on an adverse outcome after trial were not markedly harsher than pleading guilty, where the chance to avoid deportation only differed by the risk of an extra year or two of prison time. *Id*. at 1968-69. The Court concluded that Lee had demonstrated a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on proceeding to trial of the charges against him. *Id*. at 1969.

In this case, a plea of guilty and an adverse outcome after trial would result in a similar consequence for Appellant: deferred-adjudication community supervision and mandatory probation, respectively. Significantly, however, the contemporaneous evidence from the time of Appellant's plea proceeding does not show that Appellant had any concerns regarding deportation or that, as shown in *Lee*, "avoiding deportation was *the* determinative factor" in Appellant's decision to accept the plea deal and plead guilty. *See id*. at 1967. Here, Appellant informed the trial court that he understood its unqualified admonitions that if he was not a United States citizen, the federal government would in fact deport him, would in fact exclude him, and would in fact bar his reentry to the United States. Unlike Lee, Appellant did not inform the trial court that he wanted to avoid deportation, exclusion, and the bar of reentry, nor sought advice from counsel during the proceedings after receiving these admonishments. In his affidavit, Appellant states that he has lived in the United States for a long time and does not wish to be separated from his family, friends, and life in the United States, and if he had understood that he would be deported "for certain," he would not have pleaded guilty and would have been willing to risk losing at trial for a chance to remain in the United States. However, the contemporaneous evidence at the time of Appellant's does not substantiate Appellant's expressed preferences regarding deportation, as

18

he voiced none. *Lee*, 137 S.Ct. at 1965. For these reasons, Appellant has not established prejudice under the *Lee* standard.

Appellant second challenge complains of the trial court's finding that Appellant had failed to demonstrate a viable defensive theory that he could have presented at trial. Contrary to Appellant's assertions that the cocaine belonged to a dancer who was in the vehicle with him during the traffic stop, there is nothing in the plea record nor in Appellant's affidavit to support this assertion. Appellant merely makes this assertion in his writ application, but he does not aver to such facts in his writ affidavit and we find no such evidence to support this assertion advanced during the plea proceedings. In his affidavit, Appellant states only that he had informed defense counsel that the cocaine was not his, but he does not explain to whom the cocaine allegedly belonged nor does he attest to the alleged defensive theory facts alleged in his writ application. Contrary to his recent assertions, in his 2001 plea papers and during the plea proceedings, Appellant stated that he was guilty and was pleading guilty because he was guilty and for no other reason, and that his plea was made without force, coercion, threat, or promise of anything in return for such plea. We conclude the trial court's finding regarding Appellant's purported viable defensive theory is supported by the record.

Appellant next asserts that under *Perez* and *Padilla* discussed in Issue One and under elements of fairness and equity, his guilty plea should be declared not knowing and voluntary because, if his defense counsel had been under a duty to research the immigration consequences under these facts at the time of the plea, counsel's failure to proceed to trial and advance the purported viable defense would have constituted the rendering of constitutionally deficient performance. However, as Appellant acknowledges, *Padilla* was decided approximately 10 years after Appellant pleaded guilty, and because it's holding is not retroactively applied in Texas,

19

counsel was under no legal duty to explain the immigration consequences of his plea. *See Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S.Ct. 1473, 1483, 176 L.Ed.2d 284 (2010); *Ex parte De Los Reyes*, 392 S.W.3d 675, 679. Nonetheless, Appellant pleaded guilty with full knowledge of those consequences as a result of the trial court's admonitions. As we concluded in Issue One, *Perez* does not apply in the present context. *Ex parte Perez*, 398 S.W.3d at 206, 208, 215.

The trial court also found to be "not credible any allegation or assertion by applicant that he did not understand the immigration-consequence admonishment because of any alleged inability to understand the English language." In this fifth challenge to the trial court's finding, Appellant refers us to his affidavit in which he asserts that he only answered the trial court's questions as instructed by counsel due to a purported language barrier, and contending on appeal that this assertion is supported by the plea record, argues that "it is most unlikely he understood the trial court's immigration admonishments provided in English[.]" He also contends that the trial court was required to provide an interpreter and requests that we remand the writ application for development of the record.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to have the trial proceedings translated into a language he understands. *Garcia v. State*, 149 S.W.3d 135, 140 (Tex.Crim.App. 2004). This right may be waived. *Id*. at 143. If a trial court is aware the defendant does not speak or understand English, an interpreter must be provided to translate the proceedings for the defendant. *See* TEX.CODE CRIM.PROC.ANN. art. 38.30(a); *Baltierra v. State*, 586 S.W.2d 553, 559 (Tex.Crim.App. 1979); *Garcia*, 149 S.W.3d at 143. However, the fact that a defendant is more fluent in another language does not necessitate a translator if the defendant demonstrates an ability to understand and speak English. *See Linton v. State*, 275 S.W.3d 493, 502 (Tex.Crim.App. 2009); *Flores v. State*, 299 S.W.3d 843, 855 n.3

20

(Tex.App.--El Paso 2009, pet. ref'd).   A trial court is not required to appoint an interpreter over a defendant's assertion he does not require one, unless the trial court knows the defendant does not speak or understand English.   *Garcia*, 149 S.W.3d at 143.

At no time did Appellant or counsel inform the trial court that Appellant required an interpreter during the plea proceedings.   Moreover, although Appellant may be more fluent in Spanish than English, the record indicates he demonstrated an ability to understand and speak English at the plea hearing which was corroborated by the trial court's discussions with Appellant. The trial court spoke to Appellant almost exclusively in English, and after the trial court and Appellant addressed each other on very few occasions in Spanish, the trial court continued to address Appellant in English, and Appellant continued to answer in English.   The record on appeal indicates Appellant demonstrated an ability to understand and speak English at the plea hearing and supports the trial court's finding.

It was within the trial court's role as fact finder to ascertain the credibility and weight of Appellant's testimony, and because it did not abuse its discretion in making this determination, we defer to the trial court's evaluation of and factual findings regarding Appellant's credibility. Appellant has failed to overcome the heavy burden of overcoming the presumption that he entered his plea voluntarily and understood the plea hearing proceedings.   *See Fielding,* 266 S.W.3d at 636.   Because Appellant has not met his burden of proving by a preponderance of the evidence the facts that would entitle him to relief, Issue Two is overruled.   *Ex parte Richardson*, 70 S.W.3d at 870.

21

*Defective Certification*

The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he was informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP.P. 25.2(d). The certification is defective and has not been corrected by Appellant's attorney or the trial court. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to Rule 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED, to comply with all of the requirements of Rule 48.4.

## CONCLUSION

The trial court's judgment is affirmed.

December 19, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

22